UNITED STATES of America,
Appellee,

v.

Victor VANCIER, Appellant.

No. 873, Docket 74-2679.

United States Court of Appeals,
Second Circuit.

Argued April 9, 1975.

Decided May 9, 1975.

Atty. S. D. N. Y., New York City, on the brief, Lawrence S. Feld, Asst. U. S. Atty., of counsel), for appellee.

Julia P. Heit, New York City (Robert P. Leighton, New York City, on the brief), for appellant.

Before HAYS, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

HAYS, Circuit Judge:

Victor Vancier appeals from a judgment of the United States District Court for the Southern District of New York, adjudicating him a juvenile delinquent pursuant to Sections 501–07 of the Juvenile Justice and Delinquency Prevention Act of 1974, 18 U.S.C.A. §§ 5031–37 (Supp.1975). Appellant argues that under the Act, he should not have been prosecuted in the district court because, contrary to the certification of the Attorney General,[1] an "appropriate" New York State court had jurisdiction in this case. The district court held that the Attorney General's certification must be accepted by the district court as final. We affirm.

On May 24, 1974, Vancier, then 17 years of age, poured gasoline onto a car bearing diplomatic license plates and registered to Vladimir Yezhov, an official attached to the Soviet Mission to the United Nations. Two patrolmen who witnessed the incident immediately arrested both Vancier and a companion, Stanley Spirn, who was with him at the time and who had matches in his possession.[2]

In a complaint filed in New York City Criminal Court, Vancier was charged with criminal mischief in the fourth degree, a Class A misdemeanor under New York law. N.Y. Penal Law § 145.00 (McKinney's Consol.Laws, c. 40, Supp. 1974). Vancier was also charged in a

Richard J. Hoskins, Asst. U. S. Atty., New York City (Paul J. Curran, U. S.

1. The authority to certify on behalf of the Attorney General has been delegated to the appropriate United States Attorney, 28 C.F.R. 0.57, 39 Fed.Reg. 37771 (1974).

2. Spirn was separately tried and convicted of violating 18 U.S.C. §§ 970 and 2 (Supp. III 1973). His conviction was affirmed by this court. United States v. Spirn, 511 F.2d 1391 (2d Cir. 1975).

federal complaint with committing acts of juvenile delinquency based on the underlying charge of attempting to damage the property of a foreign diplomat. 18 U.S.C. § 970 (Supp. III 1973). On August 20, 1974, after it was informed of the federal complaint, the New York City Criminal Court adjourned the state complaint in contemplation of dismissal under N.Y. Criminal Procedure Law § 170.55 (McKinney 1971).[3]

On November 11, 1974, the United States Attorney for the Southern District of New York certified to the district court that

> "a juvenile or other appropriate court of the State of New York does not have jurisdiction over Victor Vancier with respect to the alleged act of juvenile delinquency . . . . ."

Based on this certification, the district court proceeded to hear the case, and adjudicated Vancier a juvenile delinquent. Vancier was committed to the custody of the Attorney General for two months. See 18 U.S.C.A. § 5037(b) (Supp.1975).

Section 502 of the Juvenile Justice and Delinquency Prevention Act of 1974 provides:

> "A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs

and services adequate for the needs of juveniles.

> "If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State." 18 U.S.C.A. § 5032 (Supp.1975).

■ Vancier concedes that the state juvenile court, the New York Family Court, does not have jurisdiction over him because he was over sixteen years of age at the time he committed the act of juvenile delinquency, see N. Y. Family Court Act § 712 (McKinney 1963). However, he argues that the New York City Criminal Court is an "appropriate" court with jurisdiction over him by virtue of the state's youthful offender program. N. Y. Criminal Procedure Law §§ 720.-10–720.35 (McKinney 1971). The Government contends that the youthful offender program is not an adequate substitute for juvenile court treatment and that it fails to provide the juvenile with the safeguards and advantages offered by the federal juvenile delinquency program. Further, the Government contends, and the district court agreed, that at least absent allegations of bad faith, the certification of the Attorney General in accordance with the Act must be accepted by the courts as final.

■ Section 502, which has been in effect only since September 7, 1974, does not provide for judicial review of the Attorney General's certification. Nor does the statute set out standards by which the court could determine the correctness of a certification either on the issue of whether an appropriate court has jurisdiction or on the issue of adequate programs and services. The certification requirement imposed by Congress qualifies the Government's prosecutorial discretion to bring juvenile de-

---

**3.** Under § 170.55, the complaint is "deemed to have been dismissed by the court in the furtherance of justice" six months after the adjournment order, unless the prosecutor has made an application in the interim to restore the case to the calendar. Since no such application was made in Vancier's case, the state complaint was deemed dismissed as of February 20, 1975.

linquency cases in the district courts, but it does not grant the power to the courts to make the final decision.

In United States v. Carter, 493 F.2d 704, 707–08 & n.3 (2d Cir. 1974), this court recently noted several instances in which it has been held that members of the executive branch are authorized to make certain unreviewable determinations in connection with law enforcement matters. See, e. g., Ullman v. United States, 350 U.S. 422, 431–34, 76 S.Ct. 497, 100 L.Ed. 511 (1956) (determination by United States Attorney that the public interest requires that a witness be compelled to testify under a grant of immunity); United States v. Singleton, 460 F.2d 1148, 1153–55 (2d Cir. 1972), cert. denied, 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973) (certification of Attorney General that proceeding is against a person believed to have participated in organized crime); United States v. Comiskey, 460 F.2d 1293, 1297–98 (7th Cir. 1972) (certification of United States Attorney that interlocutory appeal is not being taken for purposes of delay). We conclude that the certification called for by § 502, 18 U.S.C.A. § 5032 (Supp.1975), also falls into the category of unreviewable determinations to be made, in this instance, by the Attorney General. See note 1 supra.

Moreover, even if judicial review of the certification were proper, and we hold that it is not, we would nevertheless reject appellant's contention that the certification is in error or that a hearing is necessary to determine if it is in error. As the Government stated in the district court, there are several significant deficiencies in the New York youthful offender program, as compared to the federal juvenile delinquency system. These include the criminal nature of youthful offender proceedings up to the time of sentencing and the lack of special provisions for a mode of detention suitable for juveniles. Congress clearly considered it essential that juveniles not be incarcerated together with adult criminals at any time and that every effort should be made to provide community-based facilities for them. See 18 U.S.C.A. §§ 5035, 5039 (Supp. 1975). The absence of such provisions in the New York youthful offender program is sufficient to sustain the validity of the Attorney General's certification.[4]

Affirmed.

**4.** Appellant's argument that the certification was improper because it exposed him to the risk of double punishment is without merit. First, at the time of the certification, the state court had already adjourned the complaint in contemplation of dismissal in response to the issuance of the federal complaint. Second, the statute authorizes juvenile delinquency proceedings in the federal courts if certain conditions are met on the state level. Whether double jeopardy can ever attach in state-federal adjudications of juveniles is a question not before us.