**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Glen Alan WEST, Defendant-Appellant.**

**UNITED STATES of America**

v.

**Michael Eugene RUPPEL, Defendant-Appellant.**

Nos. 78–3674, 78–3675.

United States Court of Appeals, Ninth Circuit.

Oct. 29, 1979.

Glen Alan West, Victor B. Kenton, Los Angeles, Cal., for defendants-appellants.

Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and HOFFMAN *, District Judge.

PER CURIAM:

West and Ruppel appeal their convictions on several charges stemming from an abortive escape attempt from the Federal Correctional Institution at Terminal Island, California. They raise numerous issues including: (1) Whether the trial court erred in excluding evidence of an offer of amnesty; (2) Whether the indictment should have been dismissed because of pre-indictment delay; (3) Whether the trial court erred in refusing to grant a continuance prior to the closing statement; and (4) Whether the trial court should have excluded witnesses during a pre-trial hearing. We affirm.

### FACTS

On February 18, 1978, the appellants attacked prison guard Samuel Alcaraz and, after a struggle, bound and gagged him and placed him in a supply area. Thereafter, the appellants, along with two other inmates, assaulted and eventually subdued the other guard assigned to the cell block, Eugene Murrell. He was tied up and placed in a cell. Having secured the cell block, the inmates contacted prison officials by telephone, informed them that they were

---

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

holding the guards, and demanded a car to effect their escape. Associate Warden John R. Johnson refused to negotiate until the hostages were released. A few hours later, the prisoners realized that escape was impossible and began to bargain for amnesty. Johnson agreed to amnesty and safe conduct for all involved if the hostages were freed unharmed. Eventually, the hostages were freed and the inmates returned to their cells.

On July 24, 1978, a thirteen count indictment was filed against appellants and two other inmates. Both West and Ruppel were charged with seven counts.[1] After a continuance agreed to by the defendants, the matter proceeded to a jury trial before District Judge Warren J. Ferguson on October 31, 1978. The jury returned a verdict finding appellants guilty of six of the seven counts. The Court dismissed the remaining count of assault.

## I.

### AMNESTY

■ The appellants contend that the offer of amnesty by prison officials in exchange for the release of the hostages constituted a contractual agreement by which the Government was bound not to seek an indictment in this case. This argument is based primarily on an analogy to the plea-bargaining principles of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that once an agreement is reached between the Government and an accused, the Government must maintain its obligation. The district court found, however, that this agreement was induced by duress and therefore was not binding on the Government. *United States v. Gorham*, 173 U.S.App.D.C. 139, 148, 523 F.2d 1088, 1097

(D.C.Cir.1975). As the amnesty agreement had no bearing on the case other than as a complete defense to the charges, the district court excluded all evidence relating to the amnesty issue.[2]

*United States v. Gorham, supra*, and its companion case, *United States v. Bridgeman*, 173 U.S.App.D.C. 150, 523 F.2d 1099 (D.C.Cir.1975), involved an attempted escape from the D.C. jail during which a prison official was taken hostage. Through threats of violence and physical abuse, the inmates induced the official to sign an agreement promising that there would be no reprisals of any kind, nor any court action brought by him against any of the inmates involved in the escape attempt. The appellants argued that this agreement precluded the Government from prosecuting them on charges arising from the incident. The court rejected this argument finding that the agreement promised only that there would be no administrative reprisals within the prison system, not that the inmates would not be prosecuted. The court also noted:

> This conclusion is further buttressed by elementary principles of contract law, principles underlying the decision in *Santobello v. New York* and its progeny which appellants urge us to follow. Had a promise that prosecution would not ensue been offered to appellants, it would have . . . been voidable because of inducement by duress, and, because bargains involving the forebearance of prosecution are contrary to public policy, it would have been *nudum pactum*. 173 U.S.App.D.C. at 148, 523 F.2d at 1097.

■ The appellants seek to distinguish *Gorham* arguing that the trial court had before it all the necessary facts to make a

---

1. The seven counts were:

   (a) Conspiracy to escape from custody; Attempt to escape from custody (18 U.S.C. §§ 371, 751);

   (b) Attempt to escape from custody (18 U.S.C. § 751);

   (c) Kidnapping—2 counts (18 U.S.C. § 1201);

   (d) Assault with intent to escape and with a dangerous weapon with intent to do bodily harm; Crime on Government Reservation;

Aiding and Abetting (18 U.S.C. §§ 113(b), (c), 7, 13, 2); 2 counts;

   (e) Conveying weapon in Federal Correctional Institution (18 U.S.C. § 1792).

2. In addition, Judge Ferguson quashed the subpoena served on the Warden of Terminal Island. The appellants asserted that his testimony may have established that the offer had not been made under duress.

determination of the issue of amnesty whereas, in the instant case, Judge Ferguson excluded all evidence of the amnesty offer before the issue of duress was properly determined. They contend that it was error for the court to make a finding of duress without hearing the testimony of Warden Grossman, whom they suggest, may have testified that the offer was not made under duress. We agree with the district court that the testimony of the two hostages supplied a sufficient basis for its finding. The evidence is clear that the prisoners intended to harm the hostages if their demands were not met.[3]

■ In conclusion, it is apparent from the record that any agreement for amnesty or safe conduct between prison officials and the inmates was induced by duress and the Government was not prevented from prosecuting the defendants.[4]

## II.

### PRE–INDICTMENT DELAY

Appellant West contends that the trial court improperly denied his motion to dismiss the indictment for lack of a speedy trial. Judge Ferguson considered the motion both before trial and at the conclusion of the Government's case-in-chief and held that any delay in the prosecution of the case did not constitute a violation of either statutory or constitutional law. West asserts that his defense was prejudiced by the delay between the incident at Terminal Island and the filing of the indictment, a period of slightly more than five months. Specifically, he claims that many witnesses were not available due to the delay and that the delay caused memories to fade, deprived him of his ability to gather evidence, and hindered his efforts to contact witnesses.

■ In the pre-accusatory stage of criminal proceedings, defendants are protected from undue delay by the applicable statute of limitations and the general proscriptions of the Due Process Clause. *United States v. Marion*, 404 U.S. 307, 322–24, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). In *Marion, supra,* the Supreme Court held that

. . . the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.

We applied the *Marion* holding in *United States v. Mays*, 549 F.2d 670 (9th Cir. 1977), and held that three elements must be considered in testing a claim of pre-indictment delay: (1) actual prejudice to defendants, (2) length of delay, and (3) reason for delay. 549 F.2d at 677–78; see *United States v. Titus*, 576 F.2d 210, 211 (9th Cir. 1978). The crucial element in the due process test established by *Mays* is the finding of actual prejudice to the defendants. Satisfaction of this element is a prerequisite to finding a due process violation. *United States v. Titus*, 576 F.2d 210, 211 (9th Cir. 1978); *Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978). If the prejudice is allegedly due to the loss of a witness, the defendant "must show not only the loss of the witness and/or evidence but also just demonstrate how that loss is prejudicial to him." *United States v. Mays, supra,* at 677. Such proof must be definite and not speculative and "[t]he assertion that a missing witness might have been useful does not show the 'actual prejudice' required by *Marion.*" *Id.* at 677, quoting *United States v. Galardi,*

---

**3.** Associate Warden Johnson testified that the statement was not made to him that unless amnesty was granted, the inmates would harm the hostages. However, in light of such threats made in connection with other demands, it is clear that under the circumstances such a threat was understood.

**4.** Appellant Ruppel asserts that the Warden's testimony was necessary to determine if the

amnesty offer had been properly authorized. Whether authorized or not, the agreement would be voidable because it was induced by duress. See *United States v. Gorham, supra* ; 5 Williston, *Contracts* § 1605 (1937).

Ruppel also contends on appeal that the amnesty issue is not governed by contract laws but by general principles of the executive pardoning power. This argument is without merit.

476 F.2d 1072, 1075 (9th Cir. 1973), *cert. denied* 414 U.S. 839, 94 S.Ct. 90, 38 L.Ed.2d 75 (1973).

■■■ In the instant case, the appellant asserted that the delay caused him to lose the testimony of several witnesses to the incident at Terminal Island. Judge Ferguson required appellant to make offers of proof as to what the missing witnesses would testify. The offers of proof were speculative and concerned largely irrelevant testimony. The court found that this was insufficient to establish actual prejudice. We are not persuaded that this finding was clearly erroneous. *United States v. Sand*, 541 F.2d 1370, 1373 (9th Cir. 1976), *cert. denied* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 553. Since the appellant did not establish the actual prejudice required by *Marion* and *Mays*, it is unnecessary to consider the length of or the reason for the delay. *United States v. Titus, supra*, 576 F.2d at 212.[5]

## III.

### CONTINUANCE

Appellant Ruppel requested a continuance prior to his closing statement to the jury which was denied by Judge Ferguson. He argues on appeal that the judge abused his discretion to grant a continuance in light of extreme circumstances which prevented Ruppel from preparing an adequate

5. In his motion to dismiss for lack of a speedy trial, the appellant stated that he was arrested on February 21, 1978, and thereafter transferred to the Los Angeles County Jail where he was booked on charges of attempted escape. If, in fact, he was arrested immediately after the incident at Terminal Island, his speedy trial claim must be evaluated under the more stringent standards of the Sixth Amendment, *United States v. Marion, supra*. We are satisfied that even under the Sixth Amendment balancing test adopted by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), appellant has failed to establish a speedy trial violation.

Appellant's original motion to dismiss also cites the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, as mandating dismissal of the indictment. The Act requires the Government to file an indictment within forty-five (now thirty) days of arrest. The sanction for failure to comply with the time limits is dismissal of the charges,

defense. Specifically, he alleges that prison officials harassed him throughout the trial, refusing his requests for a desk or a lighted area in which to work at night. Also, he claims that he was kept up all night and he was therefore unable to make a coherent final argument.

■■■ The granting or denial of a continuance is a matter wholly within the discretion of the trial court which will not be disturbed on appeal unless that discretion is clearly abused. *United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir. 1978). The defendant assumes a heavy burden, as the discretion of the trial judge in the disposition of a motion for a continuance is broad. *United States v. Harris*, 436 F.2d 775, 776 (9th Cir. 1970). There is no indication that after fully considering the appellant's motion the trial judge abused his discretion in refusing to grant a continuance.

## IV.

### EXCLUSION OF WITNESSES

West claims that it was error for the trial court to refuse to exclude witnesses during a pretrial hearing in which offers of proof were made regarding the testimony of certain potential witnesses. In response to West's request for exclusion, the Court stated:

18 U.S.C. § 3162(a)(1). Assuming, *arguendo* that defendant was arrested on February 21, 1978, it is clear that the Government violated the Act by not filing an indictment within the time limit. However, the mandatory dismissal required by the Act does not become effective until July 1, 1980, and until then, these rules are merely directory. *United States v. Carpenter*, 542 F.2d 1132, 1134 (9th Cir. 1976). Furthermore, the "Plan for Prompt Disposition of Criminal Cases" promulgated by the Central District of California pursuant to 18 U.S.C. § 3165–3166 provides at section 5.04 that "failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution." As neither the Act itself nor the plan developed by the district required dismissal of the indictment, it was not error for the trial court to deny appellant's motion to dismiss under the Speedy Trial Act. *United States v. Carini*, 562 F.2d 144, 148 (2d Cir. 1977).

Surely. We haven't had any proceedings yet, except motions, evidentiary rulings, so we will invoke the ruling only when there is an evidentiary hearing.

Federal Rules of Evidence, Rule 615, provides in part: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." West contends that the rule requires that the witnesses shall be excluded any time an opportunity exists for them to hear the testimony of other witnesses. He asserts that the offers of proof at the hearing created such an opportunity.

In *United States v. Brown,* 547 F.2d 36 (3d Cir. 1976) cert. denied 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977), the Third Circuit considered an analogous argument. In that case, the defendant requested exclusion of the witnesses after the jury had been sworn but prior to the prosecution's opening statement. The trial court denied the motion. The defendant contended that the ruling violated Fed.R.Evid. 615. The court held

> We do not dispute that a party may request as of right that witness [sic] be excluded prior to the time that any opportunity exists for them to hear the testimony of other witnesses. We do not, however, construe a party's request for the exclusion of witnesses prior to opposing counsel's opening statement to be within the purview of Rule 615. Rule 615 relates exclusively to the time testimony is being given by other witnesses. 547 F.2d at 37.

The court also cited 6 *Wigmore on Evidence* § 1840, where it is noted:

> The *time* for sequestration begins with the delivery of testimony upon the stand and ends with the close of testimony.

The court recognized that an opening statement may improperly suggest testimony to a witness but held that Rule 615 does not deal with this danger. Finally, the court held:

The decision as to whether witnesses should be excluded prior to counsel's opening statement is committed to the discretion of the district court. Since appellant made no attempt to inform the district court why failure to exclude witnesses during the prosecutor's opening statement might prejudice appellant's case, we cannot say that the court abused its discretion in denying the motion.

In the instant case, the same danger of improper suggestion as in *Brown* was present. The offers of proof may have suggested testimony to those witnesses present in the courtroom, but as noted in *Brown,* such danger is not within the purview of Rule 615. The mandatory exclusion of witnesses exists only in an evidentiary hearing. Until that point, the exclusion of witnesses is within the discretion of the trial court.

Offers of proof were made with regard to several missing witnesses who would have testified regarding the actual incidents at the prison. West asserts that the testimony of Officers Alcaraz and Murrell may have been altered because they were present during the offer of proof. However, he fails to state how or why they would alter their testimony and does not suggest that at any point they did so. He merely alleges that the officers had the opportunity to alter their testimony in the event the witnesses were located.

Any prejudice asserted by the appellant is merely speculative and clearly not sufficient to support a ruling that the trial judge abused his discretion. See *United States v. Warren,* 578 F.2d 1058, 1076 (5th Cir. 1978).[6]

AFFIRMED.

---

**6.** Appellant West's contention that the Government abused its power over the grand jury that indicted him is without merit.