UNITED STATES of America, Plaintiff,

v.

JUVENILE, Defendant.

No. CR 84–125–RE.

United States District Court, D. Oregon.

Nov. 9, 1984.

Charles H. Turner, U.S. Atty., William W. Youngman, Asst. U.S. Atty., Portland, Or., for plaintiff.

Stephen R. Sady, Asst. Federal Public Defender, Portland, Or., for defendant.

## OPINION

REDDEN, District Judge:

An information was filed with this court on August 30, 1984 charging a juvenile, D.V., with assault on a mail carrier. On that same date a Certification for Jurisdiction was filed pursuant to 18 U.S.C. § 5032. The juvenile defendant moves to dismiss the information on the grounds of prejudicial preaccusation delay, violation of his speedy trial rights, selective and vindictive prosecution and lack of proper certification. I find the Certification for Jurisdiction filed on August 30, 1984 to be improper and dismiss the information on those grounds. I will, however, address the other motions brought by the defendant.

*Motion to Dismiss for Prejudicial Preaccusation Delay and Violation of Speedy Trial Rights.*

In determining whether preaccusation delay may bar prosecution, three elements must be considered: 1) actual prejudice to the defendant, 2) length of the delay, and 3) reason for the delay. *United States v. West,* 607 F.2d 300, 304 (9th Cir. 1979), *United States v. Mays,* 549 F.2d 670, 677–78 (9th Cir.1977). The crucial element is actual prejudice, and the burden is upon the defendant. *United States v. West, supra.* The prejudice shown must be actual prejudice to the defense of the case which is presently proceeding. *United States v. Henry,* 615 F.2d 1223, 1234 (9th Cir.1980), *United States v. Tousant,* 619 F.2d 810, 814 (9th Cir.1980). Further, actual prejudice to the defense of the case must be shown before the court considers the other two elements. *United States v. Mills,* 641 F.2d 785, 788 (9th Cir.1981).

Defendant contends that he is prejudiced by preaccusation delay in this case because it interferes with a state rehabilitation program in which he is presently involved. He further contends he was prejudiced because the delay between the occurrence of the incident and the filing of the information resulted in psychological damage to him. (The incident took place on March 31, 1984 and the information was filed on August 30, 1984, resulting in a 162 day delay).

Defendant's contention that interference with his state court rehabilitation program results in prejudice to him is without merit. The Ninth Circuit in *United States v. Henry* specifically rejected this position. In that case, the defendant claimed that preindictment delay interfered with his right to contest extradiction proceedings in state court. The Court rejected his argument, stating:

> Even if we accepted the defendant's allegations as true, we would not find any prejudice to the presentation of his defense in this action.

615 F.2d at 1234.

Defendant cites *P.V. v. District Court,* 199 Colo. 357, 609 P.2d 110 (1980) as authority for his position that delay in juvenile proceedings is psychologically destructive and ultimately prejudicial to the defense of such cases. Defendant's reliance on this case is misplaced. That case involved a 13 month delay from the time the juvenile was charged until he was scheduled to appear for hearing. The Court held

that delay violated the juvenile's speedy trial rights. There was no discussion of preaccusation delay.

Defendant has failed to make a showing of actual and definite prejudice in the defense of this case such as the loss of witnesses or unavailability of evidence which would exonerate the defendant. *United States v. Mays*, 549 F.2d 670 (9th Cir.1977). Interference with defendant's state rehabilitation program or psychological harm are not the type of prejudice which would prevent defendant from effectively defending himself in the present case. I need not consider the length of delay or the reason for it, as no actual prejudice has been shown. Defendant's motion for preaccusation delay is denied.

*Motion to Dismiss for Violation of Speedy Trial Rights.*

■ Two applicable statutes are to be considered in determining whether defendant's speedy trial rights have been violated. 18 U.S.C. § 5036 states "[i]f an alleged delinquent who is *in detention* pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed...." (Emphasis added). 18 U.S.C. § 3161(c)(1) allows seventy days from the time a plea of not guilty is entered until the day of trial to elapse before a defendant's speedy trial rights are violated. Since defendant is not and has not been in detention, 18 U.S.C. § 5036 does not apply.

The juvenile entered a plea of not guilty on September 10, 1984 and a hearing on the merits was set for October 3, 1984. All extensions have been at defendant's request, and with the proviso that the extensions would not be in violation of his speedy trial rights. Accordingly, the 23 day delay between the entry of defendant's not guilty plea and the original October 3, 1984 hearing date is not violative of defendant's speedy trial rights. The motion to dismiss the information for violation of defendant's speedy trial rights is denied.

*Motion to Dismiss for Selective and Vindictive Prosecution.*

■ Vindictive prosecution occurs when the government increases the severity of alleged charges in response to a defendant's exercise of constitutional or statutory rights. *United States v. Burt*, 619 F.2d 831, 836 (9th Cir.1980). To succeed, the defendant must show: 1) others were not prosecuted for the same conduct, and, 2) the decision to prosecute was based on impermissible grounds. *United States v. Wilson*, 639 F.2d 500, 503 (9th Cir.1981), *United States v. Choate*, 619 F.2d 21, 23 (9th Cir.1980). Mere selectivity in prosecution creates no constitutional barrier. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962).

■ Defendant states that on May 30, 1984 he exercised his due process rights in the state court proceedings by challenging his commitment to MacLaren School for Boys. Because the information in this proceeding was filed subsequent to that challenge, defendant claims vindictive prosecution here. This argument fails for two reasons. First, Assistant United States Attorney William Youngman, who filed the information, has submitted an affidavit stating that the government was unaware of the defendant's challenge of his commitment to MacLaren School for Boys until after he had received defendant's memorandum in support of the motion. Therefore, the federal court proceeding could not have been instituted in response to defendant's exercise of constitutional rights. Second, the government's information contains the original and only charge brought against the defendant in any court arising out of his alleged assault on a mail carrier. Thus, the severity of the alleged charges has not been increased by the government. Defendant has not proven a claim for vindictive prosecution.

■ As to his claim for selective prosecution, defendant has not shown that any other person who was alleged to have committed a felonious assault on a mail carrier was not prosecuted for such conduct. Defendant has failed to allege any impermissi-

ble grounds on which the decision to prosecute was based. Defendant's motion to dismiss the information on the grounds of vindictive and selective prosecution is denied.

*Motion to Dismiss for Lack of Proper Certification.*

18 U.S.C. § 5032 states:

A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any Court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency or (2) does not have available programs and services for the needs of juveniles...."

Assistant United States Attorney William Youngman filed the Certification for Jurisdiction pursuant to 18 U.S.C. § 5032 on August 30, 1984, requesting this court assume jurisdiction over an alleged assault on a mail carrier by the juvenile defendant. The certification was filed in reliance on a letter from Multnomah County Deputy District Attorney Gary Meabe, which stated in pertinent part:

The purpose of this letter is to notify you that our office is declining prosecution on a case number 498–55669–ECR (1) which involved the assault/robbery of a postal carrier by a juvenile known as [D.V.]. I am writing to you so that you can comply with the Federal Juvenile Delinquency Act 18 U.S.C. § 5032.

This refusal is not based on the merits of the case. Nor should this be interpreted as a change in policy. It merely reflects that the nature of this particular incident makes Federal prosecution more appropriate.

Defendant argues that the certification is improper because the Multnomah County District Attorney's Office does not have the ultimate authority to refuse to prosecute a juvenile case. That authority, defendant argues, lies with the juvenile court.

■ In reviewing the sufficiency of a Certification for Jurisdiction, the specific policy behind the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042, should be considered. The certification procedure in § 5032 encompasses a recognition of the general policy of federal abstention in juvenile proceedings. The procedure was designed to insure that only where there was no jurisdiction, except in federal court, were the federal courts to intrude into juvenile delinquency jurisprudence. *United States v. Sechrist,* 640 F.2d 81 (7th Cir. 1981). It has long been recognized that the federal court system is at best ill equipped to meet the needs of juvenile offenders. Deference to the state courts should always be observed except in the most severe of cases. 120 Cong.Rec. 25162 (1974).

■ *United States v. Ramapuram,* 432 F.Supp. 140 (D.Md.1977) held that a state's refusal of jurisdiction need not come from the state court, if the refusal originates from a state official having ultimate authority to assume or refuse jurisdiction. The juvenile court system in Oregon is unique. There is no statute declaring who has that ultimate authority. Rather, the system is more of a symbiotic relationship between the courts, the juvenile department and the district attorney's office in determining which cases will and will not be prosecuted.

At the hearing witnesses explained the process by which such a decision is reached as to a particular juvenile offender.

The testimony established that when a violation of any state or local law is reported involving a juvenile, the police submit a report to the juvenile court. The district attorney's office then reviews the charges contained in the report for legal sufficiency. If legal grounds exist for a charge, the deputy district attorney drafts a petition. The petition is referred to the juvenile department for review by a court counselor. If the counselor decides not to file the petition, but the district attorney wishes to

proceed, the matter is referred to the director of the juvenile department for a final decision.

There was testimony that in routine matters, the deputy district attorney makes the initial determination whether to prosecute a particular charge against a juvenile, and that this decision is rarely challenged. However, there was testimony from Juvenile Court Judge Steven Herrell that the decision on whether to proceed in juvenile court, or to defer to federal jurisdiction, should be made only after a conference between the deputy district attorney, the juvenile court counselor, the juvenile, his attorney and the juvenile court judge.

No such procedure was followed in the present case. As a matter of fact, the police report was never seen by the court counselor who was assigned to personally supervise the juvenile. Nor was the decision to refuse jurisdiction of the alleged assault ever communicated to anyone within the juvenile court system outside of the district attorney's office. Under the factual circumstances surrounding this case, I find that Deputy District Attorney Gary Meabe did not have the "ultimate authority" to refuse jurisdiction, and I therefore dismiss the information.

The government makes one final argument that must be addressed. The government asserts that even if the court finds its original certification deficient, its subsequently amended certification is proper. The amended certification includes a statement that the offense charged is a felony, a crime of violence, and that there is a substantial federal interest in the case. This statement was not included in the original certification and was apparently added to reflect the amendments made to 18 U.S.C. § 5032 by the Comprehensive Crime Act, signed into law on October 12, 1984. The government argues that the application of the amendments does not trigger the *ex post facto* clause because 18 U.S.C. § 5032 is procedural rather than criminal. I do not find this reasoning convincing.

While the government has cited several cases which state that a proceeding under the federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042, is procedural rather than substantive, none of these cases speak to the issue of the *ex post facto* clause, or any other constitutionally protected right of the juvenile offender. *United States v. Gonzalez-Cervantes*, 668 F.2d 1073 (9th Cir.1981), *United States v. Allen*, 574 F.2d 435 (8th Cir.1978), *United States v. E.K.*, 471 F.Supp. 924 (D.Or.1979). These cases state only that an adjudication of delinquency is a status for the offender and not a criminal conviction. Moreover, the cases note the importance of protecting juveniles from harsh and unnecessary federal prosecution.

Although a proceeding under 18 U.S.C. § 5032 is classified as procedural rather than criminal, it cannot be said that the proceedings are not criminal in nature. The juvenile is charged in a criminal information, then arraigned to enter a plea of guilty or not guilty. He may be detained prior to the adjudication hearing, and if found to be a delinquent he faces the possibility of incarceration. Thus, the juvenile is subjected to criminal proceedings even though criminal conviction is not entered on his record.

■■■■ A law is subject to the *ex post facto* clause if it is retrospective and disadvantages the offender. *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). A law cannot be applied retrospectively to defeat a pre-existing defense to the charge. *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1976). The retrospective establishment of federal jurisdiction violates the *ex post facto* clause. *Putty v. United States*, 220 F.2d 473 (9th Cir.1955). *Cf.*, *Woxberg v. United States*, 329 F.2d 284 (9th Cir.) *cert. denied* 379 U.S. 823, 85 S.Ct. 45, 13 L.Ed.2d 33 (1964); *Pennington v. Guam*, 228 F.2d 892 (9th Cir.1955).

■■■■ I find that retrospective application of 18 U.S.C. § 5032 as amended would violate the *ex post facto* clause. The original certification is defective as a matter of law, and the amended certification does not rec-

tify the defect, but seeks jurisdiction on an independent basis which was not available to the government when the original certification was filed. Thus, to apply the amended statute in the present case would not only disadvantage the juvenile, but would defeat his defense to the original certification and impose federal jurisdiction in a situation where none existed.

## CONCLUSION

The information charging the juvenile with assault on a mail carrier is dismissed on the grounds that the certification is facially deficient. Defendant's motions to dismiss the information on the grounds of vindictive and selective prosecution, prejudicial preaccusation delay and violation of his speedy trial rights are denied.